## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**JAMES M. STREBER,**

      **Plaintiff,**

**vs.**                                             **Case No. 1:16cv23-CAS**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

      **Defendant.**

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a Social Security case referred to the undersigned upon consent of the parties, ECF No. 8, and reference by Senior District Judge Maurice M. Paul.   ECF No. 9.   The decision of the Commissioner is affirmed.

## I.   Procedural History

On February 23, 2012, Plaintiff, James M. Streber, applied for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II Social Security Act (Act) and also applied for Supplemental Security Income (SSI) benefits pursuant to Title XVI of the Act for a period of disability with an alleged onset date of August 18, 2007, alleging he

suffered from liver disease, herniated disc, and pain in his neck, back, and hip.   Tr. 27, 79, 220-27, 251, 282.   (Citations to the transcript/administrative record shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)

Plaintiff's claims were denied initially on June 1, 2012, and upon reconsideration on July 24, 2012.   Tr. 27, 102, 125-26, 130, 133-49, 154, 159.   On September 3, 2012, Plaintiff requested a hearing and filed a pre-hearing brief on February 4, 2011.   Tr. 27, 164.   On June 27, 2013, Plaintiff's counsel notified the Office of Disability Adjudication and Review that Plaintiff objected to a video teleconference hearing and requested to appear for live hearing.   Tr. 184.   On November 4, 2013, Plaintiff's counsel advised the ALJ that Plaintiff would appear in person for the hearing scheduled for January 31, 2014.   Tr. 185; *see* Tr. 188-89.   The hearing was re-scheduled for April 4, 2014.   Tr. 190, 196.

On March 13, 2014, Plaintiff's counsel requested the ALJ to schedule an orthopedic evaluation for Plaintiff and further noted that "he has no current medical treatment and has not had a consultative evaluation since May 2012."   Tr. 326.   Plaintiff's counsel also requested a neuropsychological evaluation with IQ testing for Plaintiff with the same

notation.   Tr. 327.   On April 1, 2014, Plaintiff's counsel provided the ALJ

with a letter containing an introduction and background and a review of

available evidence.   Tr. 328-29.   In part, Plaintiff requested "a neurological

evaluation to determine if any of his symptoms are associated with the

basal ganglia calcification."   Tr. 329.   Counsel also provided the ALJ with

an article from Wikipedia pertaining to "Fahr's syndrome."   Tr. 330-34.

On April 4, 2014, Administrative Law Judge (ALJ) Kelley Fitzgerald

held a hearing in Jacksonville, Florida.[1]   Tr. 27, 43-78.   Plaintiff testified.

Tr. 47-74.   Plaintiff was represented by Jessica C. Dumas, an attorney.

---

[1]   Early in the hearing, Plaintiff's counsel asked the ALJ about her prior requests for consultative examinations and the ALJ said she would "make a decision on that."   *Id.*   Tr. 46.   The ALJ asked Plaintiff's counsel whether she was sure that she had all of the "voc rehab records" and explained that she noted that Plaintiff was treated by a doctor and thought there was some "preliminary and follow-up."   Tr. 46-47.   Counsel responded that "[t]here was no follow-up on the calcification in his brain, if that's what you're asking.   And no, I'm not sure.   I can re-request if you feel like something's missing."   Tr. 47.   Plaintiff testified, in part, regarding his referral to Dr. Trimble at vocational rehabilitation.   Tr. 47-51.   After the ALJ asked some questions, the ALJ stated that she thought there are some records missing that need to be obtained.   Tr. 51.   The ALJ stated that she was not going to hold the record open for them, but would "look at them if they're received before the decision is issued."   *Id.*   Counsel responded: "Yes, your honor."   Tr. 51-52.   There is a "Report of Contact" in the record dated April 4, 2014, that states: "The request for CE's is denied at this time per ALJ."   Tr. 335.

Tr. 18-19, 27, 43, 45.   Rebecca Hayes, an impartial vocational expert, testified at the hearing.   Tr. 27, 74-77, 186-87 (Resume).

On April 25, 2014, the ALJ entered a decision concluding that Plaintiff is not disabled.   Tr. 36-37.   The ALJ also denied Plaintiff's "requests for additional consultative evaluations" stating "[t]here is no evidence that the claimant's medical condition has worsened since the previous evaluations were performed."   Tr. 27.   On June 20, 2014, Plaintiff filed a request for review of the ALJ's decision and submitted a brief, Tr. 14-22, 336-37, that was denied on December 28, 2015.   Tr. 1-7.   The ALJ's decision stands as the final decision of the Commissioner.   *See* 20 C.F.R. § 404.981.

On February 2, 2016, Plaintiff filed a Complaint in this Court requesting judicial review of the Commissioner's final decision.   ECF No.1. Both parties filed memoranda of law, ECF Nos. 17 and 18, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1.  "The claimant meets the insured status requirements of the Social Security Act through June 30, 2012."   Tr. 29.

2.  "The claimant has not engaged in substantial gainful activity since August 18, 2007, the alleged onset date."   *Id.*

3.   "The claimant has the following severe impairment: disorders of the spine."   *Id*.   The ALJ also considered the four broad functional areas known as the "paragraph B" criteria that are used to evaluate mental disorders and in section 12.00C of the Listing of Impairments.   The ALJ determined that Plaintiff had *mild* limitation in activities of daily living and social functioning as well as concentration, persistence, or pace and had no episodes of decompensation, which have been of extended duration.   Tr. 30. The ALJ noted, however, that these limitations are not a residual functional capacity (RFC) assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.   *Id*.   As part of her step two analysis, the ALJ provided an RFC assessment that "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."   Tr. 31.   To this end, the ALJ considered the psychological evaluations from Laura A. Cohen, Ph.D. (April 14, 2009) and Carmen Tozzo-Julian, Ph.D. (May 16, 2012).   Tr. 31. The ALJ also considered the opinions of two State agency consultants who prepared Psychiatric Review Technique (PRT) assessments: Jennifer Meyer, Ph.D., and James Levasseur, Ph.D.   *Id*.

4.   "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 32.

5.   "[T]he claimant has the residual functional capacity [RFC] to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)."   Tr. 32.

6.   "The claimant is capable of performing past relevant work as a pool servicer (medium exertion, semi-skilled, with an SVP of 4); condo maintenance (medium exertion, skilled, with an SVP of 7); and delivery driver (medium exertion, semi-skilled, with an SVP of 3).   Tr. 35.   "This work does not require the performance of work related activities precluded by the claimant's [RFC]."   *Id*.

7.  At step five, the ALJ determined that Plaintiff can perform other jobs in the national economy having taken "administrative notice that there are approximately 2,500 separate sedentary, light and medium unskilled occupations [that] can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy (Appendix 2 to 20 CFR 404.1500).   These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience."   Tr. 36.

8.  "The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2007, through the date of this decision."   *Id.*

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.   42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).   The court may not reweigh the evidence or substitute

its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.   Moore, 405 F.3d at 1211.2

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"   Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

2   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

economy."   42 U.S.C. § 423(d)(2)(A).   A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).[3]   Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.   20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

---

[3]   The relevant DIB and SSI regulations are virtually identical.   As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.   The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, *e.g.*, 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.   If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish

---

[4]   An RFC is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment"* describes an adjudicator's finding about the ability of an individual to perform work-related activities.   The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert. Phillips, 357 F.3d at 1239-40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.   If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211; Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).   On the other hand, the ALJ has a basic obligation to develop a full and fair record and must develop the medical record for the twelve months prior to the claimant's filing of his application for disability benefits.   Ellison, 355 F.3d at 1276; Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R.

§ 404.1512(d).   A claimant must demonstrate that he or she was prejudiced by the ALJ's failure to develop the record before a due process violation will justify remand.   Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).   In making this determination, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"   Id.   (citing Brown v. Shalala, 44 F.3d at 934-35).

## IV.   Legal Analysis

> **Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and not entitled to a remand to more fully develop the record.**

Plaintiff argues that the ALJ committed reversible error because she failed to fully and fairly develop the record by not obtaining updated consultative examinations.   ECF No. 17 at 1, 7-12.

Plaintiff filed his DIB and SSI applications on February 23, 2012, alleging disability beginning *August 18, 2007*.   Tr. 27.   The claims were denied initially on June 1, 2012, and upon reconsideration on July 24, 2012, followed by a request for hearing filed on September 3, 2012.   *Id*. The hearing was held on April 4, 2014.   *Id*.; *see supra* at 2 regarding delay in setting the hearing.

As noted by the ALJ, "[t]here are no medical records prior to 2009,

even though the alleged onset date is August 18, 2007."   Tr. 33.   As part

of her RFC assessment, the ALJ summarized the minimal medical

evidence of record.

> The claimant is fifty years on the alleged onset date, and fifty-six on
> the date of the hearing.   The claimant has an eighth grade
> education.   The claimant participated in classes through vocational
> rehabilitation but he has not taken the general educational
> development (GED) diploma examination.   The claimant testified
> that he could not remember the math equations he was taught.
> The claimant has been caring for his mother, who had a stroke and
> is unable to drive and can barely walk.   The claimant takes care of
> her needs.   After a referral by vocational rehabilitation, the claimant
> went to Dr. Tremble, however subsequent appointments were
> cancelled after vocational rehabilitation did not consider the
> claimant disabled.   The claimant is 5'8" tall and weighs 180 lbs.
> The claimant is right handed.   The claimant has a driver's license
> and he drives every day.   The claimant testified that he is unable to
> work outside in the intense heat.   The claimant receives food
> stamps.    The claimant is single and has lived with his mother
> since February 2009.   The claimant does the household chores.
> During the day, the claimant tends to his vegetable garden where
> he grows vegetables such as cucumbers, sweet potatoes, squash,
> and tomatoes.   The claimant testified the only household chore he
> could not perform was plumbing.
>
> The claimant testified that he has headaches that are intense.
> The claimant testified that he has pain in his back and neck.    The
> pain in his back is a between a 6 and 7, however at times it is a 10,
> and he cannot walk.
>
> After careful consideration of the evidence, I find that the claimant's
> medically determinable impairments could reasonably be expected
> to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant has alleged that he is unable to work due to limitations from disorders of the spine; however, the medical evidence of record does not support these allegations.

The claimant alleges disorders of the spine as a severe impairment. There are no medical records prior to 2009, even though the alleged onset date is August 18, 2007.   On July 23, 2009, D. Troy Trimble, D.O., saw the claimant based on a referral from Vocational Rehabilitation because of sharp and jabbing pain in his lower back. The claimant stated that his back was aggravated by crawling under a mobile home.   Overall, the examination was normal. Dr. Trimble diagnosed low back pain in the left leg, suspicious of the possibility of a disc herniation at L4-5 or L5-S 1.   Dr. Trimble also noted that on the claimant's past medical he listed alcoholism (Exhibit 6F).   Dr. Trimble recommended a magnetic resonance imaging (MRI) scan (Exhibit 6F).   On September 25, 2009, the claimant had a lumbar myelogram, which showed mild spinal stenosis at L4-L5, and to a lesser degree L3-L4, otherwise no nerve cutoff or instability was noted (Exhibit 5F pages 6-7, 7F pages 9-10). A follow up computerized tomography scan of the lumbar spine was consistent with the myelogram, and showed mild spinal stenosis of L4-L5 and to a lesser degree L3-L4 (Exhibits 6F page 5-6, 7F pages 11-12).

The claimant has minimal medical evidence to support the impairment of disorders of the spine.   On October 15, 2012, the claimant went to North Florida Regional Medical Center emergency room with a sore throat.   The examination at the ER revealed no motor or sensory deficits, and his strep test was negative (Exhibit 12F pages 4-5).

Tr. 32-33.   The ALJ's RFC assessment includes consideration of the

consultative examination evaluation of Dr. Chodosh (January 11, 2011), Tr. 437-44; a second consultative examination evaluation of Dr. Chodosh (May 9, 2012), Tr. 457-69; the State agency Physical (RFC) Assessments of Dr. Waldman (May 17, 2012), Tr. 96, and Dr. Junejo (July 20, 2012), Tr. 123.   Tr. 33-34, 113.

The ALJ considered Dr. Chodosh's two evaluations, but gave "little weight" to his first evaluation in 2011 and "significant weight" to his May 2012 evaluation "because he based his opinion on independent medical examinations, a review of the claimant's medical history, and history given to him by the claimant (Exhibit 10F)."   Tr. 34.   The ALJ noted that Dr. Chodosh's May 2012 opinion "is consistent with not only clinical testing, but also his personal observations of the claimant" and the "[RFC] stated in this opinion is consistent with" his findings.   *Id.*   The ALJ also noted that "Drs. Waldman and Junejo found a severe impairment for spine disorder and found that the claimant could perform work-related activities at a wide range in the medium exertional level."   *Id.*   The ALJ gave their opinions "great weight and agree[d] the claimant is able to perform in the medium exertional level, and we all agree the claimant is not disabled (Exhibits 1A, 2A, 7A, 8A)" and also stated that the RFC assessment "is consistent with"

their opinions.   Tr. 34-35.

As part of her step three analysis, the ALJ considered the psychological evaluations of Dr. Cohen (April 14, 2009), Tr. 338-41, Dr. Tozzo-Julian (May 16, 2012), Tr. 471-74, and the State Agency consultants' PRT's performed by Drs. Meyer and Levasseur, on June 1, 2012, and July 18, 2012, respectively.   Tr. 31, 84, 110, 121.   The ALJ noted that these latter evaluations were considered as part of her RFC assessment insofar as they reflected "the degree of limitation [she] found in the 'paragraph B' mental function analysis."   Tr. 31.

On March 13, 2014, Plaintiff's counsel requested the ALJ to schedule an *orthopedic evaluation* for Plaintiff and further noted: "He has no current medical treatment and has not had a consultative evaluation since May 2012."   Tr. 326.   Plaintiff's counsel also requested a *neuropsychological evaluatio*n with IQ testing for Plaintiff with the same notation.   Tr. 327.   On April 1, 2014, Plaintiff's counsel provided the ALJ with a letter containing an introduction and background and a review of available evidence.   Tr. 328-29.   In part, Plaintiff requested "a neurological evaluation to determine if any of his symptoms are associated with the basal ganglia calcification."

Tr. 329.   Counsel also provided the ALJ with an article from Wikipedia pertaining to "Fahr's syndrome."   Tr. 330-34.

In his June 24, 2014, letter to the Appeals Council, Plaintiff's counsel argued that the ALJ erred in failing to analyze Plaintiff's diagnosis of basil gangliar calcification and failed to find that it was a severe impairment. Tr. 336.   The ALJ did not mention Plaintiff's CT scan of his brain of February 2, 2011.   Tr. 33, 453.   The referring physician was Richard Martin, M.D.   The findings of the scan were: "The CT scan of the head shows calcification at the level of the basal ganglia.   I do not see anything to suggest hemorrhage or mass.   There is no atrophy.   There is no significant periventricular white matter disease."   Tr. 453.   This scan was not mentioned by Dr. Chodosh in his May 9, 2012, consultative examination report.   Tr. 466-69.   Further, a notation in an October 15, 2012, record from North Florida Regional Medical Center, where Plaintiff was admitted (and discharged on the same date) at the ER with a sore throat, stated that "[o]ld records unavailable."   Tr. 479.

Also in his June 20, 2014, letter to the Appeals Council, Plaintiff's counsel argued that the ALJ failed to find that Plaintiff's "mental impairment was more than minimally severe, particularly when the agency's own expert

assigned [Plaintiff] a <u>Global Assessment of Functioning</u> (GAF) score of 50."[5]   Tr. 16, 336.   The ALJ considered Dr. Tozzo-Julian's evaluation of May 16, 2012, including his GAF score of 50, Tr. 471-74.   Tr. 31.

After a delay in scheduling the hearing, *see supr*a at 2, on April 4, 2014, the ALJ held a hearing in Jacksonville, Florida.   *See supra* at 3 n.1; Tr. 27, 43-78.   On April 24, 2014, the ALJ entered a decision concluding that Plaintiff is not disabled.   Tr. 36-37.   The ALJ also denied Plaintiff's "requests for additional consultative evaluations" stating "[t]here is no

---

[5]   The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the GAF Scale that is primarily used by mental health practitioners.   The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34.   The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.   *Id.   See* <u>Nichols v. Astrue</u>, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale).   A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.   *Id.*   A GAF scale rating of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.*   The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"   <u>Wind v. Barnhart</u>, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).   In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (5th Ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.   In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures")."   DSM-5 at 16.

evidence that the claimant's medical condition has worsened since the previous evaluations were performed."   Tr. 27.

As noted by the ALJ, Plaintiff was 50 years old on the alleged onset date and 56 years old on the date of the hearing.   Tr. 32.   He has an eighth grade education and participated in classes through vocational rehabilitation; he does not have a GED diploma.   *Id.*   He is single and has been caring for and lives with his mother (since February 2009), who had a stroke and is unable to drive and can barely walk; he takes care of her needs.[6]   Tr. 32, 63.   His mother receives social security and he does the household chores, keeps the restrooms clean, and mows the lawn. Tr. 63.   He receives food stamps.   Tr. 62.

After a referral by vocational rehabilitation, Plaintiff went to Dr. Trimble, however, subsequent appointments were canceled after vocational did not consider Plaintiff disabled.   Tr. 32-33; *see* Tr. 417-22, 428-35 (Dr. Trimble-July 13, 2009, CT and lumbar myelogram results). Although Plaintiff stated that vocational rehabilitation wanted him to appeal the decision, he did not appeal this determination.   Tr. 64-65.   It was at

---

[6]   Plaintiff reported to Dr. Cohen in April 2009 that he was homeless at that time. Tr. 339.   He had county insurance pending; he went to the 7th Avenue Clinic once.   Tr. 340.   He also reported he did not have health insurance and received food stamps. Tr. 34, 98.

the time his mother had a stroke and he "figured [he] could do it next year

or the next year --."   Tr. 65.   He did not return to vocational rehabilitation.

*Id.*

Plaintiff testified that he has headaches that are intense and has pain

in his back and neck and the pain in his back is between a six and seven,

however, at times it is a ten, and he cannot walk.   Tr. 33.

Plaintiff discussed his work history.   Tr. 54-57; *see* Tr. 252 (job

history), 259 (work history report).   In 2007, he was working for Miami

Management as a "[p]orter, maintenance, four apartments."   Tr. 55.   He

performed janitorial type maintenance.[7]   Tr. 56.   He was terminated from

that job because he got "real bad pain, which [he thinks] is CTE," because

he had been assaulted and hit on the head many times.   He played

contact football since he was 11 and 12 years old and had received a

concussion and probably received three or four concussions after that.   He

took too much aspirin and was told it can "cause liver damage from the

acetaminophen type aspirin."   *Id.*   He stopped working on August 18,

2007, and except for working a few hours for his brother, he has not

---

[7]   The record reflects Plaintiff's earnings since 1999 (going back 15 years, Tr. 57).   Tr. 233-49.   He described some of those jobs at the hearing. Tr. 57-62; *see* Tr. 235-39, 244-49.

worked since, although thereafter, he looked for perhaps 50 jobs.   Tr. 56-57.

The ALJ noted Plaintiff's complaints of disorders of the spine and further noted that there were no medical records prior to 2009, even though the alleged onset date is August 18, 2007.   Tr. 33.   Nevertheless, the ALJ discussed Dr. Trimble's patient notes including a recommendation for an MRI in 2009 and the results of a September 2009 lumbar myelogram and follow-up computerized tomography scan of the lumbar spine.   The results were similar: mild spinal stenosis of L4-L5 and to a lesser degree L3-L4.   Tr. 33.   The ALJ also reviewed patient notes from Plaintiff's ER visit at North Florida Regional Medical Center on October 15, 2012, when he complained of a sore throat.   "The examination at the ER revealed no motor or sensory deficits, and his strep test was negative."   Tr. 33 (citations omitted).[8]

---

[8]   After discussing the consultants' evaluations, the ALJ determined that "[t]he totality the evidence contradicts the claimant's statements that he is disabled and unable to work."   Tr. 34.   "Additionally, even though the claimant alleged disability beginning on August 18, 2007, on July 13, 2009, the claimant indicated to Dr. Trimble that he had a recent onset of back pain, after crawling under a mobile home, snaking pipes, and taking out the septic tank (Exhibit 6F page 3).   The claimant's acknowledgment of the recent onset of back pain, as well as the level of activity, indicate that the claimant was not disabled."   *Id.*   The ALJ reached other conclusions in her decision regarding Plaintiff's ability to work including that "[c]ontemporaneous medical records do not corroborate the alleged onset date and he testified that he stopped working because he was terminated for taking too many breaks."   Tr. 35.   The

In general, the above references complete the discussion of Plaintiff's medical evidence aside from the consultative evaluations.   Plaintiff does not argue that the ALJ overlooked any medical evidence in the record or suggest that there is other existing medical evidence that should have been gathered and considered.   ECF No. 17.   Rather, Plaintiff's argument is that the consultative evaluations considered by the ALJ were outdated.

Plaintiff "maintains he was disabled through the date of his hearing *but was unable to obtain medical treatment*.   Thus, in order to fully and fairly evaluate the severity status of his condition, *updated consultative examinations were required*.   Without such examinations and finding of disability through April 2014 is not supported by substantial evidence." ECF No. 17 at 11 (emphasis added).

During the hearing, Plaintiff and his counsel did not suggest that Plaintiff was unable to afford medical treatment after his alleged onset date of August 18, 2007, particularly after Dr. Trimble's assessment in 2009, or after the May 2012 evaluations until the ALJ's decision on April 25, 2014. Tr. 33, 43-78.   Further, over five years passed between Plaintiff's alleged

---

ALJ determined that it did "not appear that the claimant's unemployment is due to disability."   *Id.*

onset date and the May 2012 consultant evaluations and it does not appear there are any missing medical records of Plaintiff's examination(s) or treatment(s) during this time period.

Although the medical evidence is sparse, aside from parts of Dr. Tozzo-Julian's May 16, 2012, psychological evaluation that somewhat support Plaintiff, *see* Tr. 31, no medical source has opined that Plaintiff's alleged impairments are so limiting that Plaintiff cannot work.   *See* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000).   Plaintiff did not allege that he was unable to access a medical source, including a local health department for follow-up care due to lack of transportation or an inability to afford same, although it appears Plaintiff may not have had health insurance.[9]   *See, e.g.,* Tr. 98, 340.   It does not affirmatively appear he attempted to seek out alternative transportation services or low-cost or free health care from a health care clinic or otherwise follow-up with physicians after a reported ER visit in 2012, Tr. 33, or that his purported inability to pay deprived him of any needed health care services.   *See* Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); *see also* Gwathney v. Chater, 104 F.3d

---

[9]   As of May 11, 2012, it is reported that Plaintiff was "currently not seeing anyone" and had "no insurance."   Tr. 98; *see supra* at 18 n.6.

1043, 1045 (8th Cir. 1997) ("[F]ailure to seek medical assistance . . .

contradicts [ ] subjective complaints of disabling conditions and supports

the ALJ's decision to deny benefits."   (citation omitted)).

"A consultative examination is a physical or mental examination or

test purchased for you at [the Agency's] request and expense from a

treating source or another medical source, including a pediatrician when

appropriate."   20 C.F.R. § 404.1519.   In general, "[i]f [the Agency] cannot

get the information [the Agency] need[s] from [the claimant's] medical

source, [the Agency] may decide to purchase a consultative examination."[10]

20 C.F.R. § 404.1519a(a).   Agency regulations provide that the

assessment of a consulting examiner will be evaluated according to a

number of factors, including its consistency with the record as a whole and

the extent to which the source presents medical evidence to support the

opinion.   *See* 20 C.F.R. § 404.1527(c)(3), (4).

The ALJ has a basic obligation to develop a full and fair record, and

must develop the medical record for the twelve months prior to the

claimant's filing of an application for disability benefits.   Ellison v. Barnhart,

355 F.3d at 1276 (stating that the ALJ was not bound to develop the

---

[10]   This appears to be the case here because of the lack of medical evidence.

medical record for the two years after the claimant filed his application for benefits); *see also* 20 C.F.R. § 404.1512(d) (stating that it is the SSA's responsibility to "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[d] [his or her] application").[11]

"Under the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled." Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 67 (11th Cir. 2010) (unpublished) (citing 20 C.F.R. § 416.917).   But the ALJ "is not required to order additional examinations if the evidence in the record is sufficient to allow [her] to make an informed decision." *Id.*  (citing Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007)); Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988).

---

[11]   For the purpose of considering SSI benefits, the relevant period of time for this case is August 18, 2007, the alleged onset date, and April 25, 2014, the date of the ALJ's decision.   For the purposes of considering a period of disability and DIB, the relevant time period is August 18, 2007, to June 30, 2012, the last date of insured status, although the application remains in effect until the ALJ's decision is issued. Tr. 27; *see* 20 C.F.R. § 404.620(a); *see generally* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).

Plaintiff does not argue that the ALJ failed to develop a medical record for the relevant period.   Instead, Plaintiff complains that the ALJ should have sought additional consultative examinations relating to a period after May 2012 and before her decision in April 2014.   Existing precedent does not extend the ALJ's duty so far in light of the facts of this case.   *See* Smith v. Comm'r of Soc. Sec., 501 F. App'x 875, 879 (11th Cir. 2012) (unpublished).

The evaluations by the consultants from May 2012 were timely made after the medical record was developed.   *Compare* Surber v. Comm'r of Soc. Sec., Case No. 3:11-cv-1235-J-MCR, 2013 U.S. Dist. LEXIS 29254, at 18-19 (M.D. Fla. Mar. 5, 2013) *with* Zellner v. Astrue, Case No. 3:08-cv-1205-J-TEM, 2010 U.S. Dist. LEXIS 46361, at *15-17 (M.D. Fla. Mar. 29, 2010).   As a result, the ALJ was not required to further develop the record before reaching her conclusion that Plaintiff was less impaired than he claimed.

On this record, there are not the kinds "of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff.   Graham v. Apfel, 129 F.3d at 1423.   The record contains sufficient evidence for the ALJ to make an informed decision.   Plaintiff did not demonstrate that the absence of

additional consultative examinations from 2013 and 2014 prejudiced his

claim.   Graham, 129 F.3d at 1423.   Substantial evidence supports the

ALJ's determination that Plaintiff is not disabled and no further

development of the record is required.

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are

based upon substantial evidence in the record and the ALJ correctly

followed the law.   Accordingly, pursuant to 42 U.S.C § 405(g), the

decision of the Commissioner to deny Plaintiff's applications for Social

Security benefits is **AFFIRMED.**   The Clerk is **DIRECTED** to enter

judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on September 8, 2016.

**s/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**